IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ADAM WENZKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 18-299 (MN) |
| | ) |
| PAOLA MUNOZ, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Adam Wenzke, James T. Vaughn Correctional Center, Smyrna, Delaware. Pro Se Plaintiff.

Dana Spring Monzo, Esquire, and Karine Sarkisian, Wynn, Esquire, White & Williams, Wilmington, Delaware. Counsel for Defendants.

July 23, 2019
Wilmington, Delaware

NOREIKA, U.S. District Judge:

Plaintiff Adam Wenzke ("Plaintiff"), who appears *pro se* and was granted permission to proceed *in forma pauperis*, is an inmate at the James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware. He filed this lawsuit pursuant to 42 U.S.C. § 1983.[1] (D.I. 3). The original Complaint was dismissed upon screening and Plaintiff was given leave to amend. (D.I. 12, 13). Plaintiff timely filed an Amended Complaint. (D.I. 15, 16). Before the Court is Defendants' motion to dismiss the Amended Complaint. (D.I. 25). Briefing is complete.

## I.  BACKGROUND

The original Complaint alleged that Defendants were deliberately indifferent to Plaintiff's serious medical needs and he was denied his right to equal protection when he was refused medical care, prison employment, and educational and computer classes. The Complaint was dismissed and Plaintiff was given leave to amend the mental health/medical needs claims. (D.I. 13). Plaintiff has filed an Amended Complaint with two supplements. (D.I. 15, 16, 31).

Plaintiff alleges that thirteen years ago he was diagnosed with bi-polar disorder, depression, and anxiety. (D.I. 15 ¶ 2). Over the years he has tried "just about every mental health medication" so he knows first-hand what works for him and what does not work for him. (*Id.*). On March 29, 2016, Plaintiff was transferred from Howard R. Young Correctional Institution to the JTVCC. (*Id.* ¶ 1). When Plaintiff arrived at JTVCC, he spoke to mental health and was told he would be seen by a mental health physician because his medication was causing side effects. (*Id.*).

---

[1]  When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Plaintiff's main complaint is that health care providers will not provide him the type of medication he requested. (*Id.* ¶¶ 3, 4). Instead he is prescribed medication the mental health care providers believe is appropriate for Plaintiff. (*Id*. ¶¶ 3, 4, 8, 9). Plaintiff alleges that he suffered side-effects from the medication prescribed. (*Id*. ¶ 4). At one point, Plaintiff stopped taking his medication due to the side-effects. (*Id*. ¶ 5).

On August 28, 2017, Plaintiff was told that he was scheduled to be seen by Defendant Susan Mumford ("Mumford") and he was seen by her on September 14, 2017.[2] (*Id.* ¶ 15). She prescribed a new medication (Cymbalta) which Plaintiff agreed to take "against his better judgment." (*Id*. ¶¶ 16, 35). Plaintiff alleges that during the visit Mumford stated that she did not think Plaintiff was bi-polar anymore and expressed concern about different diagnoses and treatments of different health care providers. (*Id.* ¶¶ 17, 34). Within two weeks, Plaintiff began having side effects from the medication prescribed by Mumford. (*Id*. ¶ 18). Plaintiff complained to a mental health counselor about the medication and the counselor told Plaintiff he would see if a medication could be prescribed for the side effects, but nothing happened. (*Id*.).

Plaintiff continued to complain about side effects throughout October and November 2017, and he also wrote to Mumford. (*Id*. ¶¶ 20, 21, 35). He saw Mumford on November 20, 2017, and she told Plaintiff to stop taking the medication. (*Id.* ¶¶ 23, 36). Plaintiff asked Mumford to prescribed Wellbutrin which Plaintiff has found works best for him (in combination with other medications), but Mumford prescribed a different medication (Trazadone), a drug Plaintiff had originally asked for but was told the "policy" was to not give Wellbutrin. (*Id*. ¶¶ 6, 23, 24).

---

[2] The Amended Complaint identifies Mumford as a physician, but Defendants indicate that she is a nurse practitioner.

Even though he stopped taking it, Plaintiff continued to have side effects from Cymbalta and complained in writing to Mumford. (*Id.* ¶ 25). Plaintiff alleges that mental health knew of Cymbalta's side effects and of his complains that even though he stopped taking the medication months ago he continues to experience the side effects. (*Id.* ¶¶ 33, 37). After reading a basic pharmacology book, Plaintiff self-diagnosed tardive dyskinesia and tardive akathisia. (*Id.* ¶ 19). Plaintiff alleges that when Mumford later prescribed Trazadone it stopped working after ten days, and Mumford promised to raise the dosage. (D.I. 16 at 2). Plaintiff alleges that he has been promised this before and it has never happened. (*Id.*).

Plaintiff alleges that he was switched to a new doctor he identifies as mental health Defendant Dr. Moses ("Moses").[3] (D.I. 15 ¶ 38). Moses provided Plaintiff information about his mental health condition and told Plaintiff that if other mental health providers were not going to treat Plaintiff then neither could he. (*Id.* ¶ 38). Plaintiff continued to be seen by Moses from whom he requested mental health treatment. (*Id.* ¶ 40). Plaintiff requested medication to treat the side effects from Cymbalta and Moses told Plaintiff that he was not going to prescribe any medication "at this time." (*Id.* ¶ 40).

Plaintiff was examined by a dentist on May 21, 2018, who recommended a mouth guard for sleeping to ease Plaintiff's side effects. (*Id.* ¶ 39). Plaintiff was told that if the mouth guard was approved it would take two to four weeks "if" they were going to order one. (*Id.*). Plaintiff alleges that dental ordered the night guard, but it only partially works. (D.I. 16 at 3). Plaintiff alleges that dental ordered the wrong guard and will not change it. (*Id.*).

---

[3] The Amended Complaint identifies Moses as a doctor, but Defendants indicate that Moses is a nurse practitioner whose name is Moses Mbugua.

Plaintiff alleges that Defendant mental health director Paola Munoz ("Munoz") failed to respond to his letters complaining of his mental health treatment and asking for help, although Munoz responded to Plaintiff's request for an affidavit of merit. (D.I. 15 ¶¶ 11, 13, 26, 27, 29, 35). Plaintiff alleges that Munoz has known about his situation for over a year and has allowed Mumford and Moses "not to treat" Plaintiff for his mental health conditions. (*Id*. ¶ 41).

The Amended Complaint alleges that mental health has refused to treat him and allowed him to suffer by not treating him with medication to ease the side effects that resulted from the medication he was given. (*Id*. ¶ 44). He refers to the Delaware Department of Correction policy "stating the seriousness of [his] mental illness which they refus[e] to treat." (*Id*. ¶ 45).

Munoz, Mumford, and Moses are sued in their individual and official capacities. (D.I. 15 at 2). Connections is sued in its official capacity. (*Id*.). Plaintiff seeks compensatory and punitive damages, as well as declaratory relief, and injunctive relief.

Defendants move to dismiss for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that: (1) there cannot be a claim for deliberate indifference where Plaintiff's claims are based upon his mere disagreement with the course of treatment provided and medical judgments issued by medical defendants; (2) personal involvement in the alleged deliberate indifference is an absolute requirement to hold an individual defendant liable; (3) the Amended Complaint fails to establish that Connections maintained a policy, practice, or custom that caused a constitutional harm to Plaintiff which is a requirement to establish a § 1983 claim against a medial contractor; (4) to the extent Plaintiff raises a claim under the Americans with Disabilities Act, it must be dismissed as a matter of law; (5) the Amended Complaint fails to allege intentional infliction of emotional distress as a matter of law; and (6) to the extent Plaintiff raises a medical negligence claim it fails as a matter of law.

## II. LEGAL STANDARD

Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When presented with a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), district courts conduct a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11. Second, the Court determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Fowler*, 578 F.3d at 210. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a

plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). In addition, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## III.    DISCUSSION

### A.    Medical Needs

Defendants seeks dismissal of the Eighth Amendment claims for lack of personal involvement and for Plaintiff's failure to allege deliberate indifference to a serious medical need. Plaintiff argues that Defendants refused to provide him treatment options, conspired in diagnosing him, delayed treating him and/or provided him incorrect treatment. Plaintiff has provided numerous exhibits.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 104-05.

"[P]rison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993). Although "[a]cts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" constitute cruel

6

and unusual punishment under the Constitution, *Estelle*, 429 U.S. at 106, merely negligent treatment does not give rise to a constitutional violation, *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). "Allegations of medical malpractice are not sufficient to establish a Constitutional violation," nor is "[m]ere disagreement as to the proper medical treatment." *Spruill*, 372 F.3d at 235.

The allegations are that Plaintiff has been provided mental health treatment, he has been diagnosed differently by different mental health providers, he has been prescribed medication of his choosing and not of his choosing, he has suffered side effects from medication prescribed, and he was provide with a dental guard but it does not work as satisfactorily as he would like.

The allegations in the Amended Complaint do not rise to the level of deliberate indifference to a serious medical need. Rather, they indicate that Plaintiff has been provided mental health treatment while incarcerated and that he disagrees with the treatment provided him. "When a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *United States v. Fayette Cty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979); *see also Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) ("when medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care."). While Plaintiff may disagree with the treatment and medication provided to him, his disagreement does not rise to the level of a constitutional violation, particularly in light of the fact that he has repeatedly received mental health treatment. *See e.g.*, *Spruill v. Gillis*, 372 F.3d at 235.

Perhaps the allegations could be construed as asserting negligence in providing medical care. However, allegations of medical malpractice are not sufficient to establish a Constitutional

violation. *White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990) (citations omitted); *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (negligence is not compensable as a Constitutional deprivation).

While Plaintiff may not agree with the treatment provided, the adequacy of the treatment, the medications prescribed, or the diagnosis rendered it cannot be said those concerns implicate violations of the Eighth Amendment. Therefore, the Court will grant Defendants' motion to dismiss the § 1983 claims.

### B. Policy or Custom

The Amended Complaint purportedly attempts to raise a claim against Connections based upon its policies in treating an inmate with mental health needs. When a plaintiff relies upon a theory of respondeat superior to hold a corporation liable, he must allege a policy or custom that demonstrates such deliberate indifference. *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989); *Miller v. Correctional Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992). In order to establish that Connections is directly liable for the alleged constitutional violations, Plaintiff "must provide evidence that there was a relevant [Connections] policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories).

The Court has concluded that the allegations against the individual medical defendants did not violate Plaintiff's constitutional rights under the Eighth Amendment. Connections, therefore, cannot be liable based on the theory that it established or maintained an unconstitutional policy or custom responsible for violating Plaintiff's rights. *See Goodrich v. Clinton Cty. Prison*,

214 F. App'x 105, 113 (3d Cir. 2007) (policy makers not liable in prison medical staff's alleged deliberate indifference to prisoner's serious medical needs, where, given that there was no underlying violation of prisoner's rights, policy makers did not establish or maintain an unconstitutional policy or custom responsible for violating prisoner's rights). Notably, the policy in question is one established by the DOC and not Connections.

Accordingly, the Court will grant the motion to dismiss the claims raised against Connections.

C.   **Americans with Disabilities Act ("ADA")**

Defendants move to dismiss claims raised by Plaintiff under the ADA, to the extent Plaintiff intended to do so. In the Amended Complaint Plaintiff refers to the ADA, 42 U.S.C. § 12101 *et seq*.

To state a claim under Title II of the ADA, Plaintiff must establish that: "(1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Haberle v. Troxell*, 885 F.3d 170, 178 (3d Cir. 2018) (brackets omitted); *CG v. Pennsylvania Dep't of Educ.*, 734 F.3d 229, 236 (3d Cir. 2013) ("To satisfy . . . causation [under the ADA], Plaintiffs must prove that they were treated differently based on . . . their disability."); *see also* 42 U.S.C. § 12132.

"The treatment (or lack thereof) of a prisoner's medical condition typically does not provide a basis upon which to impose liability under the ADA." *McClintic v. Pensylvania. Dep't of Corr.*, No. 12-6642, 2013 WL 5988956, at *11 (E.D. Pa. Nov. 12, 2013). *See also Iseley v. Beard*, 200 F. App'x 137, 142 (3d Cir. 2006) (noting that denial of medical treatment for disabilities "is not encompassed by the ADA's prohibitions"); *Burger v. Bloomberg*, 418 F.3d 882,

9

883 (8th Cir. 2005) (concluding that a lawsuit under the ADA "cannot be based on medical treatment decisions"); *Fitzgerald v. Corrections. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (medical decisions do not ordinarily fall within the scope of the ADA); *Rashad v. Doughty,* 4 F. App'x 558, 560 (10th Cir. 2001) ("[T]he failure to provide medical treatment to a disabled prisoner, while perhaps raising Eighth Amendment concerns in certain circumstances, does not constitute an ADA violation."); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("He is complaining about incompetent treatment of his paraplegia. The ADA does not create a remedy for medical malpractice.").

Plaintiff's allegations that Defendants did not sufficiently treat his mental health conditions are not properly brought under the ADA. The ADA claims fail as a matter of law. Accordingly, Defendants' motion to dismiss the ADA claims will be granted.

### D. Supplemental Claims

Because the Complaint fails to state a federal claim, the Court declines to exercise jurisdiction over Plaintiff's supplemental state law claims of intentional infliction of emotional distress and medical negligence. *See* 28 U.S.C. § 1367; *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003); *Sarpolis v. Tereshko*, 625 F. App'x 594, 598-99 (3d Cir. 2016).

## IV. <u>CONCLUSION</u>

For the above reasons, the court will grant Defendants' motion to dismiss the Amended Complaint. (D.I. 25). The Court finds amendment futile.

An appropriate order will be entered.

10